*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *VINCENT J. DiSTEFANO,* )  |  |
| )  |  |
| *Plaintiff* )  |  |
| )  |  |
| *v.* )  | *Docket No. 04-194-B-W* |
| )  |  |
| *JO ANNE B. BARNHART,* )  |  |
| *Commissioner of Social Security,* )  |  |
| )  |  |
| *Defendant* )  |  |

*REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises three issues: whether the testimony of a vocational expert was required, whether the Listing for petit mal seizures was met and whether the administrative law judge's evaluation of the plaintiff's credibility was adequate. I recommend that the case be remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from seizures, a severe impairment that did not meet or equal the criteria of any of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Finding 3, Record at 15; that the plaintiff's statements concerning his impairment and its impact on his ability to work were not entirely credible in light of

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on (*continued on next page*)

his allegations regarding work after the alleged onset date, the reports of the treating and examining practitioners and the medical history, Finding 4, *id.* at 16; that he lacked the residual functional capacity to drive, climb ladders, ropes or scaffolds, or work under hazardous conditions, Finding 5, *id.*; that he was unable to return to his past relevant work, Finding 6, *id.*; that, given his age (32, a "younger individual"), education (high school), lack of transferable skills and residual functional capacity, using Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") as a framework for decision making, the plaintiff was able to make a successful adjustment to jobs which exist in significant numbers in the national economy, *id.* at 15 & Findings 8-11, *id.* at 16; and that the plaintiff therefore was not under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, Finding 12, *id.* at 16.  The Appeals Council declined to review the decision, *id.* at 4-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the

June 2, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with (*continued on next page*)

commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 3 of the sequential process, at which stage a claimant bears the burden of proving that his impairment or combination of impairments meets or equals the Listings. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listed impairment, the claimant's medical findings (*i.e.*, symptoms, signs and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528, 416.925(d), 416.928. To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. §§ 404.1526(a), 416.926(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1526(b), 416.926(b).

### Discussion

The plaintiff contends that his impairment met the criteria of Listing 11.03. Itemized Statement of Errors Pursuant to Local Rule 16.3, etc. ("Itemized Statement") (Docket No. 8) at 2-4. That Listing provides:

> 11.03. *Epilepsy — nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.03.

---

citations to relevant statutes, regulations, case authority and page references to the administrative record.

The plaintiff relies on the testimony of Olaf S. Andersen, M.D., a medical expert called as a witness by the administrative law judge.  *Id*. at 2.  Dr. Andersen testified:

> I think he probably just falls within the listing of 11.03.  It says occurring more frequently than once weekly.  He seems to be sort of just on that cusp there.  Perhaps if he's improving, a closed period, see how he's doing in a year or so.  They seem to be coming steadily less frequent but for the moment probably 11.03.

Record at 39.  The administrative law judge addressed the Listing issue as follows:

> It was argued at hearing that the claimant met the criteria of section 11.03 due to his epileptic seizures.  However, that section requires that the seizures occur at least once a week after three months treatment.  The record does not support a finding that the required frequency is met.  The last medical report of record reveals that he had no major seizures from April 10, 2003 through the date of the last report on June 26, 2003.  Moreover, minor spells were occurring only every 7-10 days and lasted on[ly] 15-30 seconds (Exhibit 5F). He testified that the intervals between minor seizures were getting longer. Dr. Andersen testified to the effect that listing level criteria were not met as of June 2003 or earlier.  This is, that listing level criteria were not met for 12 months or longer.

*Id*. at 13.  Dr. Andersen did not so testify.  *Id*. at 38-39.[2]  On April 21, 2004, *id*. at 20, the plaintiff testified that his petit mal seizures lasted 30-45 seconds, *id*. at 36;  a physician reported on June 26,

---

[2] At oral argument, counsel for the commissioner contended that Dr. Andersen's testimony could be interpreted as the administrative law judge interpreted it by referring to the definition of impairment, which requires that an impairment have lasted for, or be expected to last, at least 12 months.  *See* 20 C.F.R. §§ 404.1509, 416.909.  Since the medical evidence only demonstrated the existence of the epileptic condition for a period of three months, counsel suggested, Dr. Andersen must have been saying that the plaintiff might meet the Listing one year in the future, when his claim could be re-evaluated.  Counsel found further support for this interpretation of Dr. Andersen's testimony in the administrative law judge's finding that Dr. Andersen "testified . . . that listing level criteria were not met as of June 2003 or earlier."  Record at 13.  This is an apparent reference to the fact that the plaintiff alleged an onset of his disability as of July 6, 2002.  *Id*. at 12.  However, Dr. Andersen's testimony cannot fairly be read to refer to the alleged date of onset at all.  The hearing was held on April 21, 2004, *id*. at 20, well past a year after the alleged date of onset.  There is medical evidence in the record that demonstrates that the seizure impairment began more than a year before the hearing, *e.g.*, *id*. at 195 (2/27/03 diagnosis of complex partial seizure with secondary generalization; "minor spells" suggest partial seizure, continue Tegretol, anti-seizure medication, Physicians' Desk Reference (59th ed. 2005) at 2377, first prescribed one week earlier), 190 (4/10/03, patient reports minor spell every 7-10 days, listing implications of seizures for work), 188 (6/26/03, plaintiff continues to report "short duration minor spells lasting for 15 to 30 seconds every 7-10 days," continuing seizure medication), and perhaps before May 2002, *id*. at 166-68 (since major convulsion of 5/8/02 plaintiff recalled 10 or 12 episodes in past year when he had "spells" involving brief loss of consciousness; further testing to be undertaken before prescribing anti-epileptic medication).  Counsel also contended that the relevant Listings require that epilepsy be documented by EEGs, and that the plaintiff could not meet Listing 11.03 because his EEGs were normal.  I find no such requirement in either Listing 11.03 or the general discussion of epilepsy in Listing 11.00.  I do note that the physician who interpreted the plaintiff's EEG stated that "[a] normal EEG does not preclude the possibility of an underlying seizure disorder."  *Id*. at 169.

4

2003, in Exhibit 5F, the exhibit cited by the administrative law judge, that the seizures lasted 15-30 seconds, *id*. at 188.  At oral argument, counsel for the commissioner was unable to provide any authority for the position that a seizure every five to eight days does not and cannot meet the requirement of a seizure "occurring more frequently than once weekly."  In the absence of such authority, that frequency seems to me to be sufficient to meet the requirements of the listing, as it apparently did to Dr. Andersen.

The plaintiff testified that the petit mal seizures occurred  "weekly . . . [n]ow it's probably up to  about every five to eight days.   At the most probably 10 days I go [at] a stretch without anything happening."  *Id.* at 29.  The plaintiff assumes, Itemized Statement at 4,  that the administrative law judge ignored this testimony because he found the plaintiff's testimony in general to be "not entirely credible," Record at 14, but the reason why the administrative law judge ignored this testimony is not stated in the decision.   In any event, an administrative law judge must state some reason for rejecting the testimony of a medical expert who testified at the hearing, particularly when that testimony is not in conflict with any other medical testimony in the record.  *See* Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2004), at 124 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.").  *See generally Munson v. Barnhart*, 217 F.Supp.2d 162, 165-66 (D. Me. 2002).  The mischaracterization of Dr. Andersen's testimony, coupled with the absence of any expressed reason for disregarding it, requires remand in this case.

I will briefly address the plaintiff's remaining claims.  He contends that the administrative law judge was required to call a vocational expert to testify because he found limitations so significant that they precluded the plaintiff from returning to his prior work.  Itemized Statement at 2. In this case, the administrative law judge found no exertional limitations.  Case law supports the plaintiff on this point,

*e.g., Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002); *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), but it would exalt form over substance to require vocational testimony in this case, where it is immediately apparent to any reasonable observer that, when the universe of unskilled jobs in the national economy is limited only by an inability to drive, to climb ladders, ropes or scaffolds and to work under hazardous conditions, Record at 16, there must be a significant number of jobs that an individual with those limitations is capable of performing.

The plaintiff also challenges the administrative law judge's finding concerning his credibility. The administrative law judge essentially discounted the plaintiff's credibility because he testified that "he would have worked full time if the work was available" and that "he could do other work as well except for lack of public transportation and his inability to drive." *Id*. at 14. The administrative law judge found that the plaintiff had significant non-exertional impairments that affected his ability to work and in fact prevented him from returning to his past relevant work. *Id*. at 16. Those impairments are fully compatible with the cited testimony. The only specific reference to the plaintiff's medical history discussed in this regard by the administrative law judge is an observation that the state-agency physician reviewers "found that the claimant only need avoid hazardous conditions," *id*. at 14 — a limitation which the administrative law judge adopted — and that the plaintiff's "condition significantly improved within 12 months of" the alleged date of onset, *id*. Again, these observations are fully compatible with the limitations imposed by the administrative law judge and thus cannot logically serve as a basis for discounting the plaintiff's credibility. *See generally* Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2004) at 133-42. This error would not require remand, however, because it appears to have been harmless. None of the plaintiff's testimony would require the imposition of any additional exertional or non-exertional limitations.

## Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** to the commissioner for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of June, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge